UNITED STATES DISTRICT
DISTRICT OF MASSACHUSETTS

SUNSHINE ROBERTSON,           )
            Plaintiff         )
                             )
v.                           )        Civil Action No. 11-30204-PBS
                             )
MICHAEL J. ASTRUE,            )
Commissioner of Social        )
Security Administration       )
            Defendant

### MEMORANDUM AND ORDER

September 20, 2012

SARIS, D.J.

## I. INTRODUCTION

Plaintiff Sunshine Robertson, who suffers from various alleged mental and physical impairments including depression, Post Traumatic Stress Disorder ("PTSD"), anxiety, and chronic back pain, seeks review of the decision denying her application for Supplemental Security Income ("SSI") payments under 42 U.S.C. § 405(g). The plaintiff has now filed for a Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules, arguing that the Administrative Law Judge ("ALJ") violated the treating physician rule by failing to assign controlling weight to the opinion of Robertson's physician, Asma Kareem, M.D. Defendant has filed a motion to affirm the decision of the Commissioner.

For the reasons set forth below, the plaintiff's motion is DENIED, and the court allows the defendant's motion to AFFIRM the decision of the Commissioner.

## II. FACTS

At the time of her application, Sunshine Robertson was 34 years old. (Tr. 28.) She has an eighth grade education and has earned a general education diploma. (Tr. 30.) Robertson's past work experiences were at a donut shop, a library, and a factory. (Tr. 34-35, 153, 289.) She has been unemployed since the beginning of 2008. (Tr. 33, 124.) Robertson has a history of substance abuse, notably opiate and crack cocaine dependence. (Tr. 10, 33, 165.)

### A. Medical History

On May 28, 2006, Robertson was admitted to the AdCare Hospital for treatment for opiate, alcohol and cocaine dependence. (Tr. 165.) On June 8, 2006, she was examined by Ronald Pike, M.D., who noted Robertson was anxious during the examination and had some difficulties with concentration, but she was oriented as to person, place and time. Id. He reported she was anxious and depressed, but she had no hallucinations or suicidal ideations, no difficulties with understanding, and her judgment appeared appropriate. Id. While in treatment at AdCare, a psychiatrist diagnosed her with depressive disorder, social phobia, and panic disorder with agoraphobia. (Tr. 166.)

While incarcerated at the Hampden County Correctional Center, Robertson was physically evaluated. Her gait was normal, and she had full range of motion in her back. (Tr. 191-92.) On August 18, 2006, Sarah Graff, M.D., a psychiatrist, examined Robertson and stated that Robertson had some anxiety and low energy/concentration, but no anhedonia, hopelessness, or suicidal ideation. (Tr. 194.) She observed that Robertson's thought processes were linear, her cognition intact, and her insight and judgment were fair. Id. Dr. Graff diagnosed Mood Disorder but ruled out major depressive disorder. (Tr. 195.) She assigned a Global Assessment of Functioning [1] ("GAF") score of 51.[2] Id.

Robertson was evaluated at the Community Substance Abuse Center on May 21, 2008. (Tr. 285.) She was found to have used cocaine, crack cocaine, heroin, and benzodiazepines in the previous month. Id. According to staff observations, Robertson's mood and affect were observed as depressed, her concentration and judgment were fair, her insight was good, and she was oriented as to person, place and time. (Tr. 287.) At the clinic she was found to have some passive suicidal thoughts but had no plan. Id.

---

[1] The GAF is a clinician's subjective evaluation of an individual's social, occupational, and psychological functioning. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32-33 (4th ed., text revision 2000).

[2] A GAF score in the range of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Id.

In May and June of 2008, Robertson was seen at Wing Memorial Hospital for depression and anxiety. (Tr. 293-98.) On May 22, 2008, Imad Khreim, M.D., found that while Robertson was anxious and her affect dysphoric, she was alert and oriented, cooperative with a coherent thought process, not experiencing any hallucinations or suicidal thoughts, and her insight and judgment were fair. (Tr. 293.) The doctor found her GAF score was 60. (Tr. 293.) The doctor diagnosed Robertson with depressive disorder, anxiety disorder, and opiate dependence on methadone maintenance. (Tr. 293, 295, 297.)

On June 6 and June 17 of 2008 Robertson met with Amelia Jaworek, M.D., to evaluate existing shoulder pain. (Tr. 219-20.) Upon examination, Robertson's neurological findings were normal, her strength and sensation were intact in her back and scapula, and she reported experiencing only mild discomfort in those areas. Id.

In July, 2008, Kipp Armstrong, a licensed independent clinical social worker, assessed a GAF score of 37 for Robertson, a low score usually indicative of needing inpatient hospitalization.[3]  He also assessed Robertson for PTSD and found she met PTSD criteria. Armstrong also diagnosed Robertson with major depression and opioid dependence. (Tr. 299.)

---

[3] A GAF score in the range of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. Id. at 34

The plaintiff was admitted to Providence Behavioral Health Hospital for substance abuse on August 27, 2008, reporting that she was using heroin, Percocet, and crack cocaine. (Tr. 347-48.) Robertson was hospitalized for nearly two weeks in October of 2008 due to substance abuse and mental health issues. (Tr. 339-43.)  A clinician noted that the plaintiff's depression and anxiety had been well controlled by her medication, but that she stopped taking the medication when she felt well. (Tr. 343.. The clinician observed that Robertson's affect was flat, but that her thought process was coherent and goal-directed, she denied suicidal ideation, psychosis and perceptual disturbances, and her gross cognition was intact. Id. She was discharged with a diagnosis of opiate dependence and advised to see a psychiatrist. (Tr. 341-43.)

Robertson met with therapist David Hamilton five times between April and June of 2009. (Tr. 412-422.) On April, 6, 2009 she claimed to have been sober for 6 months. (Tr. 412.) Mr. Hamilton diagnosed her with dysthymic disorder (social phobia), anxiety disorder, opioid dependence (early full remission) and cannabis dependence (early full remission). (Tr. 416.) Throughout the course of treatment, Mr. Hamilton gave Robertson five separate GAF scores, all ranging from 48 to 51.[4] (Tr. 417.)

---

[4] A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Id.

On July 13, 2009, the plaintiff was evaluated at the Sloan Clinic in Bay State Medical Center, where she received an initial GAF score of 57. (Tr. 450.) The clinician believed her to be seeking medication and observed that she was depressed and her judgment was minimally impaired, but her affect was appropriate, her speech was fluent, her perception was unimpaired, her orientation, memory, insight, general knowledge and abstraction were intact, her thought process was goal-directed, and she had no suicidal ideation or disorientation. (Tr. 451.) At her three month review on November 19, 2009, the clinician reported her GAF score had risen to 62.[5] (Tr. 441.)

After falling in the snow, Robertson was treated at Chicopee Medical Center on December 11, 2009. (Tr. 466.) She was evaluated by Dr. Asma Kareem, a primary care physician. Abduction was limited to 10 degrees, straight leg raising was positive on the right side, and the plaintiff had back spasms. (Tr. 467.) However, her gait was found normal and there were no gross motor or sensory deficits. Id. Ten days later, Dr. Kareem observed paraspinal tenderness and some tenderness over the lumbar spine. (Tr. 646.) However, her gait and range of motion were normal and her straight leg raising was negative bilaterally. Id.

---

[5]A GAF score of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Id. at 33

On March 26, 2010, clinician Margie Maldonado of the River
Valley Counseling Center, completed an intake form for Robertson.
(Tr. 476.) She indicated that Robertson's attitude was guarded,
suspicious, and uncooperative. Id. Robertson's affect was anxious
and constricted, her speech was halting, her judgment was
moderately impaired and her insight was absent. Id. On the other
hand, Robertson's motor activity was calm, her thought process
was intact, and she was well-oriented. Id. Ms. Maldonado
suspected that Robertson was "medication seeking" and was
reluctant to refer her to the medication clinic. Id.

**B. Consultative Evaluations and Assessments**

In response to Robertson's application for supplemental
social security income, several state agency medical consultants
reviewed plaintiff's medical files. After reviewing all evidence
through November 5, 2008, Ludmila Perel, M.D., concluded that the
Robertson was capable of completing the full range of light work
under 20 CFR § 416.967(b). (Tr. 352-59.) On reconsideration of
Robertson's claim, M. Douglass Poirier, M.D., reviewed the
evidence and assessed her physical impairments as "not severe."
(Tr. 365.)

Lawrence Langer, Ph.D., reviewed the evidence through
September 24, 2008, and concluded that Robertson was moderately
limited in her ability to understand and remember detailed
instructions, the ability to carry out very short and simple
instructions, the ability to maintain attention and concentration

for extended periods of time, the ability to get along with coworkers without distracting them, and the ability to respond appropriately to changes in the workplace. (Tr. 318-19.) However, he also opined that all of this could improve to insignificant limitations if plaintiff continued to maintain sobriety. (Tr. 320.) On reconsideration of Robertson's claim, Celeste Derecho, Ph.D., reviewed the evidence and concluded, like Dr. Langer, that Robertson had moderate difficulties in social functioning and maintaining concentration, persistence or pace. (Tr. 332, 380.) Dr. Langer found moderate restrictions in her daily living activities, while Dr. Derecho found only mild restrictions. <u>Id.</u> Dr. Derecho found one or two episodes of decompensation, Dr. Langer found none. <u>Id.</u> Dr. Derecho also maintained that Robertson could focus on a simple tasks over a two hour time frame, work in proximity to others, and make simple decisions without special supervision. (Tr. 386.) She did note that while job performance would be better if she did not interact with the public, she would not engage in behavioral extremes with coworkers. <u>Id.</u> In the absence of substance abuse, she also believed plaintiff could maintain adequate pace and attendance. <u>Id.</u>

At the request of the Social Security Administration ("SSA"), on April 7, 2009, Sanford Bloomberg, M.D., diagnosed the plaintiff with major depressive disorder, general anxiety disorder, and drug dependence, but asserted Robertson demonstrated no signs of PTSD. (Tr. 364.) Dr. Bloomberg gave her

8

a GAF score of 49, considering both her psychiatric and physical problems. (Tr. 364.)

On April 14, 2009, Daniel Dress, M.D., conducted a physical examination as part of a consultative examination report. (Tr. 367.) He noted that Robertson reported lower back pain since an injury in 2002, and found the plaintiff's back pain might limit heavy lifting. (Tr. 367, 369.) However, he also indicated good range of motion in plaintiff's back, a normal gait, no edema, and the straight leg maneuver test was negative. (Tr. 368.)

On February 8, 2010, Dr. Asma Kareem, whom Robertson had visited twice before regarding a slip and fall accident, evaluated Robertson and completed a Physical Residual Functional Capacity Questionnaire. (Tr. 456-60.) He noted that the plaintiff's psychological maladies exacerbated the symptoms of her physical impairments. Dr. Kareem concluded that plaintiff would constantly experience pain and other symptoms severe enough to interfere with the attention and concentration needed to perform even simple work tasks and was unable to tolerate even low stress jobs due to her history of severe depression. (Tr. 456-57.)

At the hearing before the ALJ on May 14,2010, Robertson offered testimony concerning her conditions including details about her depression, anxiety, panic attacks, and other physical and psychological impairments. (Tr. 23-53.) She testified that she had been sober for 19 months, (Tr. 33), and was currently

taking her psychiatric medications, (Tr. 29). She spent her days
at home and could not work because of anxiety and fatigue and due
to lack of work skills. (Tr. 36, 40.) She testified she had
problems concentrating and needed to write things down (Tr. 43),
could not commute to work because of a lapsed driver's license
and anxiety, (Tr. 30, 43), and had continued suicidal ideation,
(Tr. 44). She stated that she could walk for five minutes before
taking a break, stand for seven minutes before sitting down, and
sit for an extended period of 30 minutes. (Tr. 38-39.)

After the hearing, the ALJ ordered Robertson to undergo a
psychological Consultive Evaluation by Martin Markey, Ph.D. Dr.
Markey performed an evaluation of the plaintiff on November 10,
2010 and found that she had no signs of PTSD, but diagnosed her
with Polysubstance Addiction in short term remission, Major
Depressive Disorder, Antisocial Personality Disorder and offered
a GAF score of 50. (Tr. 480-82.)

### III. PROCEDURAL HISTORY

On June 25, 2008, the plaintiff applied for SSI, alleging
various disabilities including depression, PTSD, anxiety, and a
herniated disc beginning June 1, 1998. (Tr. 118, 123). The claim
was initially denied on November 13, 2008, (Tr. 56), and denied
again upon reconsideration on April 17, 2009, (Tr. 64-66). After
a hearing on May 14, 2010, the ALJ found the plaintiff not
disabled. (Tr. 8-18.) The ALJ found that Robertson had a residual
functional capacity ("RFC") to perform light work as defined in

20 CFR § 416.967(b), but would be limited to no more than occasional bending or twisting and would be limited to simple one-two step tasks requiring no more than occasional interaction with co-workers and supervisors and none with the general public. (Tr. 11.) The ALJ concluded that there are jobs that exist in significant numbers in the national economy that Robertson can perform, such as inserter, price marker, and laundry sorter. (Tr. 18.) In making his decision, the ALJ gave "probative weight" rather than controlling weight to the medical opinion of Dr. Asma Kareem, who plaintiff asserts is her treating physician. (Tr. 16-17.)

The Decision Review Board did not review the decision within the allotted 90 day period, rendering the ALJ's decision final and subject to judicial review. (Tr. 1-3); see 20 C.F.R. § 405.420(a)(2). This appeal followed.

## IV. STANDARD

## A. Disability Determination Process

To be eligible for Social Security disability benefits, an individual must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An impairment is only disabling if it "results from anatomical, physiological or

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." § 423(d)(3).

The Commissioner has developed a five-step sequential evaluation process to determine whether a person is disabled. See 20 C.F.R. § 404.1520(a)(4); see also Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).  Step one considers the claimant's work activity - if the claimant is engaged in "substantial gainful activity," then they are not disabled. § 404.1520(a)(4)(i).  Alternatively, if the claimant is not so engaged, the decisionmaker proceeds to step two, which determines whether the claimant has a medically severe impairment.  See § 404.1520(a)(4)(ii); see also Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987).  To establish a severe impairment, the claimant must "show that [he] has an 'impairment or combination of impairments which significantly limits . . . the abilities and aptitudes necessary to do most jobs.'" Bowen, 482 U.S. at 146 (quoting 20 C.F.R. §§ 404.1520(c), 404.1521(b)).

If the claimant successfully establishes a severe impairment, the third step determines "whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity." Id. at 141 (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)).  If so, the claimant is conclusively presumed to be disabled.  Id.  If not, the fourth step evaluates whether the impairment prevents the

claimant from performing his past work.  Id.  A claimant is not disabled if that claimant is able to perform his past work.  Id. (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)).  If a claimant cannot perform this work, the burden shifts to the Commissioner on the fifth step to prove that the claimant "is able to perform other work in the national economy in view of [the claimant's] age, education, and work experience."  Id. at 142.  If the Commissioner fails to meet this burden, the claimant is entitled to benefits.  Id.

**B. Standard of Review**

In reviewing SSI determinations, district courts do not make *de novo* determinations.  Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).  Instead, the Court "must affirm the [ALJ's] findings if they are supported by substantial evidence."  Cashman v. Shalala, 817 F. Supp. 217, 220 (D. Mass. 1993)(citing 42 U.S.C. § 405(g)); see also Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence exists "if a reasonable mind reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

In addition to considering whether the ALJ's decision was supported by substantial evidence, a court must consider whether the proper legal standard was applied.  "Failure of the [ALJ] to apply the correct legal standards as promulgated by the

regulations or failure to provide the reviewing court with the sufficient basis to determine that the [ALJ] applied the correct legal standards are grounds for reversal." <u>Weiler v. Shalala</u>, 922 F. Supp. 689, 694 (D. Mass. 1996) (citing <u>Wiggins v. Schweiker</u>, 679 F.2d 1387, 1389 (11th Cir. 1982)).

## V. DISCUSSION

Robertson contends that the ALJ's RFC assessment, that Robertson was capable of light work as defined by 20 CFR § 426.967(b), was not supported by substantial evidence.  She argues that the ALJ erred by not assigning controlling weight to the opinion of Robertson's treating physician, Dr. Kareem, and instead improperly relied on other medical reports.

Dr. Kareem reported, among other things, that Robertson's back pain required narcotic pain medication that could implicate work performance. (Tr. 456.) He opined that Robertson's many years of depression prevented her from performing even low stress jobs, and he also noted that Robertson's pain and other symptoms were severe enough to constantly interfere with attention and concentration needed to perform even simple work tasks. <u>Id.</u> Robertson, thus, presumes that the RFC assessment might be different had the ALJ assigned controlling weight to Kareem's report as a treating source.

A treating source is defined by 20 C.F.R. §§ 404.1502, 416.902 as a patient's own physician, psychologist, or other acceptable medical source who has provided medical treatment in

14

an ongoing way.  A treatment provider's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is *well-supported* by medically acceptable clinical and laboratory diagnostic techniques and is *not inconsistent with the other substantial evidence* in [the] case record." § 404.1527(d)(2) (emphasis added); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002).  Generally, treating sources are afforded more weight because they are the medical provider "most able to offer a detailed, longitudinal picture of the claimant's medical impairment(s)."  § 404.1527(d)(2). When a treating source's opinion is not given controlling weight, the ALJ must then determine the amount of weight based on factors that include the length of the treatment relationship, the nature and extent of the source's relationship with the applicant, whether the source provided evidence in support of the opinion, whether the opinion is consistent with the record as a whole, and whether the source is a specialist in the field. § 404.1527(d).  The ALJ, in his opinion, must give "good reasons" for the weight he ultimately assigns to the treating source opinion. Id.

This court concludes that the ALJ's decision to provide less than controlling weight to Dr. Kareem's report is backed by substantial evidence because Dr. Kareem's opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques and was inconsistent with the record as a

whole.

**A. Support for Treating Source Opinion**

Among other things, the ALJ did not afford Dr. Kareem's opinion controlling weight because it was "not supported by the longitudinal history," (Tr. 17) as Dr. Kareem met with Robertson only three times over a two month long period prior to his assessment, (Tr. 13, 457). A physician with few opportunities to examine a patient may be given less deference than a physician who maintains a longstanding relationship with a patient. Arruda v. Barnhart, 314 F. Supp. 2d 52, 72, 75 n.20 (D. Mass. 2004)(holding the ALJ did not err in assigning less than controlling weight to the opinion of two treating physicians who only saw the claimant once or twice). This limited patient exposure does not provide the well-supported and "detailed longitudinal picture" contemplated by 20 CFR § 404.1527(d)(2). Indeed, in some circumstances, a doctor cannot be classified as a treating physician when he has not provided medical treatment in an ongoing manner. See Rodriguez-Torres v. Sec'y of Health and Human Servs., 915 F.2d 1557 (1st Cir. 1990)(holding that a physician who met with a patient on only three occasions was not a treating physician). Given Dr. Kareem's limited treatment opportunities with the plaintiff, the ALJ could properly assign lesser weight to his opinion.

Additionally, Dr. Kareem's report appeared to be an "uncritical acceptance of the plaintiff's subjective complaints"

regarding her psychiatric limitations. (Tr. 17, 456-60.) <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001)(upholding ALJ's decision to attribute lesser weight to the report of a treating physician "based largely upon the claimant's self-reported symptoms."). Although a report including patient's subjective complaints should not be rejected out of hand, a physician's report that consists mainly of a questionnaire and checklists with little explanation may be given lesser consideration.  <u>See</u> <u>Arruda</u> 314 F. Supp. 2d at 72. <u>See also</u> <u>Machado v. Astrue</u>, 2009 U.S. Dist. LEXIS 106273 (D.R.I. Nov. 13, 2009)("[T]reating source opinions based primarily on subjective complaints may be discounted by an ALJ . . .")(citing <u>Reeves v. Barnhart</u>, 263 F. Supp. 2d 154, 161 (D. Mass. 2003)). Since Dr. Kareem's opinion regarding Robertson's psychiatric limitations appears to be based primarily on plaintiff's own responses rather than clinical evaluations, the ALJ did not err in not giving controlling weight.

Finally, in according lesser weight to Dr. Kareem's opinion, the ALJ noted that he is only a primary care physician and not a psychiatrist capable of providing a complex mental health determination. (Tr. 17.) While an evaluation of mental status need not be made by a specialist, <u>Barrett v. Sec'y of Health and Human Servs.</u>, 1984 U.S. Dist. LEXIS 24304, 6-7 (D. Mass. Aug 16, 1984), ALJ's are instructed to consider a physician's specialty to determine weight of their authority, once the opinion is no

longer afforded controlling weight. § 404.1527(d). Since Dr. Kareem did not specialize in psychiatry, the ALJ did not err in lessening the weight of his assessment.

**B. Consistency of Treating Source Opinion**

There is also substantial evidence in the record to support a finding that Dr. Kareem's report is inconsistent with the record as a whole. (Tr. 13.) Although, Dr. Kareem found substantial impairments that would preclude Robertson from performing even low-stress occupations, other medical reports found only mild to moderate physical impairments and generally moderate challenges in social, occupational, and psychological functioning that would still permit Robertson to perform several job functions.

**i. Physical Impairments**

The ALJ found plaintiff's claim of physical impairments was particularly lacking, noting "the virtual dearth of objective evidence." (Tr. 17.) In June of 2008, Dr. Jaworek evaluated Robertson for complaints of shoulder pain but reported only "mild discomfort." (Tr. 220.)  In February of 2009, while being treated by Caring Health Center, Robertson had full range of motion in her back area. (Tr. 438.) When plaintiff was evaluated by Dr. Dress in April of 2009, she self-reported problems with back pain and Dr. Dress indicated Robertson may have limitations as to heavy lifting, but he also noted good range of motion in her

back, strength testing normal to the arms and legs, and a gait within normal limits. (Tr. 13, 368-69.) The ALJ noted that although plaintiff indicated that her back pain was due to a herniated disc for which she has received physical therapy and a series of injections, there is no evidence in the record to support this contention. (Tr. 13.) In reviewing plaintiff's claim for reconsideration, the state agency medical consultant, Dr. Perel, examined all medical evidence through November 5, 2008 and assessed the plaintiff still capable of performing the full range of light work. (Tr. 16, 351-59.) Finally, Dr. Poirier reviewed all medical evidence through April 17, 2009 and found plaintiff's physical impairment "not severe." (Tr. 26, 365.) Given these reports, the ALJ had substantial evidence to find Dr. Kareem's assessment of Robertson's physical impairments was inconsistent with other medical evidence on the record and, so, to provide lesser weight to his opinion.

### ii. Mental Health Impairments

With respect to the plaintiff's mental health history, there is substantial evidence to suggest inconsistencies between Dr. Kareem's assessment and the record as a whole. All prior evaluations Robertson underwent noted that she was depressed and that she was mentally impaired, but most did not suggest that she was unable to work. (Tr. 320, 386, 481-82). Throughout the course of her documented psychiatric history, Robertson received numerous GAF scores suggesting only mild or moderate impairments:

August 2006, GAF 51 (Tr. 195); May 2008, GAF 60 (Tr. 293); April - June 2009, GAF 48-51 (Tr. 417); July 2009, GAF 57 (Tr. 450); November 2009, GAF 62 (Tr. 441.) These scores belie Dr. Kareem's assessment that Robertson could not perform even low-stress jobs. While GAF scores on their own may not be determinative, when taken together with the record as a whole, the ALJ had additional evidence on the record to support a finding of inconsistency. Both SSA consultative psychologists reviewed all medical evidence available at the time and concluded that Robertson could perform many basic work-related tasks and noted only mild to moderate functional limitations. (Tr. 318-335, 370-386.) The record does reveal a long history of plaintiff's depression and anxiety related disorders. However, her evaluators also frequently noted that Robertson's thought process was linear (Tr. 194), coherent (Tr. 293, 343), and goal-directed (Tr. 343, 451); her judgment was appropriate, fair or intact (Tr. 165, 194, 287, 293); and she was well-oriented (Tr. 165, 287, 293, 451). The record also shows evidence of social phobia diagnoses, (Tr. 166, 416, 481) but in plaintiff's interview with Dr. Markey she claimed she did not have a social phobia she just prefers not to socialize, (Tr. 479). Given these varied evaluations, there was substantial evidence to support a finding that Dr. Kareem's RFC assessment was inconsistent with the medical record, permitting the ALJ to assign less than controlling weight to his opinion.

   The plaintiff has highlighted some evidence in the record

consistent with Dr. Kareem's opinion to argue that his
conclusions should be given controlling weight. Specifically, she
notes that several physicians reported lower GAF scores,
including a score of 50, (Tr. 482), 49 ,(Tr. 364), and a notably
low score of 37, (Tr. 299). Plaintiff also questions the ALJ's
reliance on Dr. Markey's warnings regarding Robertson's possible
exaggeration and over-reporting of symptoms as compared to other
evidence in the record corroborating similar symptoms. (Pl.'s
Mem. in Supp. for J. on the Pleadings, 13-14). However, it is the
role of the ALJ to resolve such conflicts in the evidence and
make credibility determinations. See Ortiz v. Sec'y of Health and
Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) ("It is the
responsibility of the [Commissioner] to determine issues of
credibility and to draw inferences from the record
evidence . . . . [T]he resolution of conflicts in the evidence is
for the [Commissioner], not the courts."); Evangelista v. Sec'y
of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987)
("Conflicts in the evidence are, assuredly, for the
[Commissioner]-rather than the courts-to resolve.").

Indeed, the ALJ did make credibility findings to resolve
conflicting evidence and did not ignore these inconsistent
opinions as plaintiff asserts. The ALJ did not credit Dr.
Bloomberg's GAF score of 49 because he calculated it using
plaintiff's physical and psychological symptoms. (Tr. 14-15.) The
ALJ reasoned this is inconsistent with DSM-IV practices, which

21

specifically instruct physicians not to include "impairment in functioning due to physical (or environmental) limitations" in their GAF score. American Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 30 (4th ed., text revision 2000). The ALJ also did not credit Mr. Armstrong's GAF score of 37, since a score this low generally indicates such low functioning as to require hospitalization. The ALJ concluded such a low score was goal-oriented to receive coverage for treatment. (Tr. 14.)  "[E]ven if the administrative record could support multiple conclusions, a court must uphold [the Commissioner's] findings," so long as there is substantial evidence to support the ALJ's determination. <u>Caney v. Astrue</u>, 2012 U.S. Dist. LEXIS 107183, 2–3 (D. Mass. Aug. 1, 2012)(citing <u>Ortiz</u>, 955 F.2d at 769). As illustrated above, there is substantial evidence to support the ALJ's conclusion that Dr. Kareem's opinion was inconsistent with the record and entitled to lesser weight, and so this court upholds his finding.

Given the short period of treatment time, Dr. Kareem's medical background, the lack of objective evidence of physical impairment, and the inconsistency between Dr. Kareem's report and the record as a whole, the ALJ provided good reasons for assigning Dr. Kareem's opinion only "probative weight."

ORDER

The Court ALLOWS the defendant's motion to affirm (Docket 12) and DENIES plaintiff's motion for judgment on the pleadings (Docket 9).

/s/ PATTI B. SARIS
PATTI B. SARIS
United States District Judge